**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **MAO-MSO RECOVERY II, LLC, *et al.*,** | * | |
| **Plaintiffs,** | * | |
| **v.** | * | **Case Nos.:   PWG-17-711** |
| | | **PWG-17-964** |
| **GOVERNMENT EMPLOYEES** | * | |
| **INSURANCE COMPANY,** | | |
| | * | |
| **Defendant.** | | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION AND ORDER**

Plaintiffs MAO-MSO Recovery II, LLC, MSP Recovery, LLC, and MSPA Claims 1, LLC have filed two putative class action lawsuits, *MAO-MSO Recovery II, LLC v. Government Employees Insurance Company*, PWG-17-711 (the "No-Fault Case"), and *MAO-MSO Recovery II, LLC v. Government Employees Insurance Company*, PWG-17-964 (the "Settlement Case"), against Defendant Government Employees Insurance Company ("GEICO").[1] They seek reimbursement for accident-related medical expenses that Medicare Advantage Organizations ("MAOs") paid on behalf of Medicare-eligible beneficiaries, claiming that GEICO was statutorily-obligated to pay for the expenses. No-Fault Am. Compl. ¶¶ 4–5, ECF No. 33 in No-Fault Case; Sett. Am. Compl. ¶¶ 3–4, ECF No. 28 in Sett. Case. In both cases, "Plaintiffs assert

---

[1] Plaintiffs refer to "GEICO and its affiliates" in their pleadings and referred to "Defendants" in their original complaint in the No-Fault Case. Their amended complaints in both cases, however, only refer to GEICO in the singular, and they have only submitted summons for GEICO itself in each case. *See* ECF No. 1-3 in No-Fault Case; ECF No. 1-2 in Sett. Case. Thus, it is clear that GEICO is the only Defendant.

the rights of MAOs via assignment of all rights, title, and interest allowing them to bring these claims." No-Fault Am. Compl. 2 n.2; Sett. Am. Compl. ¶ 2.

In the No-Fault Case, the injured beneficiaries had no-fault insurance policies through GEICO. No-Fault Am. Compl. ¶¶ 4–5.[2] In the Settlement Case, it was not the injured beneficiaries who were insured through GEICO; rather, the beneficiaries were injured in accidents in which the tortfeasors had insurance through GEICO, and the beneficiaries entered into settlements with GEICO following the accidents. Sett. Am. Compl. ¶¶ 3–4. Plaintiffs allege that, under both circumstances, GEICO "was responsible for paying those expenses . . . in the first instance, . . . under the Medicare Secondary Payer provisions," 42 U.S.C. § 1395y(b), and therefore was obligated to reimburse the MAOs, but failed to do so. No-Fault Am. Compl. ¶¶ 1–5; *see* Sett. Am. Compl. ¶¶ 1–4. Plaintiffs filed both lawsuits on behalf of themselves and all others similarly situated.

GEICO has moved to dismiss the complaints and specifically the class allegations in both cases. Because Plaintiffs have standing and pleaded plausible claims for relief, I will deny the motions to dismiss. As for GEICO's requests to dismiss the class allegations, I will deny them without prejudice to filing motions to strike in each case at the point of class certification. And, insofar as GEICO's motions allege that Plaintiffs lack standing, the denials are without prejudice to renewal at the close of discovery, should the record support the renewal.

---

[2] "At this stage, all well-pleaded allegations in a complaint must be considered as true and all factual allegations must be construed in the light most favorable to the plaintiff." *Nam v. 2012 Inc.*, No. DKC-15-1931, 2016 WL 107198, at *3 (D. Md. Jan. 11, 2016) (citing *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999)).

## The Medicare Secondary Payer Provisions

The Medicare Act, 42 U.S.C. §§ 1395–1395hhh, provides health care coverage, "serv[ing] as a federal health insurance program benefitting the disabled and persons over the age of sixty-five." *O'Connor v. Mayor of Balt.*, 494 F. Supp. 2d 372, 373 (D. Md. 2007). Initially, it "often acted as a primary insurer, . . . pa[ying] for enrollees' medical expenses even if there was overlapping insurance coverage or when a third party had an obligation to pay for the expenses." *MAO-MSO Recovery II, LLC v. Farmers Ins. Exch.* ("*Farmers*"), No. 217CV02522CASPLAX, 2017 WL 5634097, at *2 (C.D. Cal. Nov. 20, 2017). Then, Congress passed the Medicare Secondary Payer provisions ("MSPP"), 42 U.S.C. § 1395y, "to 'reduce Medicare costs by making the government a secondary provider of medical insurance coverage when a Medicare recipient has other sources of primary insurance coverage.'" *Brown v. Thompson*, 374 F.3d 253, 257 (4th Cir. 2004) (quoting *Thompson v. Goetzmann*, 337 F.3d 489, 495 (5th Cir. 2003)); *see Netro v. Greater Balt. Med. Ctr. Inc.*, No. GLR-16-3769, 2017 WL 5635446, at *2 (D. Md. Apr. 13, 2017) (same); *O'Connor v. Mayor of Balt.*, 494 F. Supp. 2d 372, 373 (D. Md. 2007) (same). The MSPP "shifts responsibility for medical payments to other group health plans, workers' compensation, no-fault and liability insurers, which are considered 'primary plans.'" *Farmers*, 2017 WL 5634097, at *2 (quoting 42 U.S.C. § 1395y(b)(2)).

Pursuant to the MSPP, Medicare cannot make a payment "with respect to any item or service to the extent that . . . payment has been made, or can reasonably be expected to be made, with respect to the item or service" by a primary payer; Medicare may, however, make a "conditional payment" if a primary payer "has not made or cannot reasonably be expected to make payment with respect to such item or service promptly." 42 U.S.C. § 1395y(b)(2)(A)(i), (B)(i). Conditional payments are made "with the expectation that the primary payer will later

reimburse Medicare if responsible for the cost." *O'Connor*, 494 F. Supp. 2d at 373 (citing 42 U.S.C. § 1395y(b)(2)(B)). If Medicare makes a conditional payment, "the primary payer must then reimburse Medicare . . . 'if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service.'" *Farmers*, 2017 WL 5634097, at *2 (quoting 42 U.S.C. § 1395y(b)(2)(B)(ii)). The MSPP permits "private citizens [to] sue primary payers when a primary payer 'fails to provide for primary payment (or appropriate reimbursement),'" and it provides for double damages. *Netro*, 2017 WL 5635446, at *3 (quoting 42 U.S.C. § 1395y(b)(3)(A)); *see O'Connor*, 494 F. Supp. 2d at 373.

## **Procedural Background**

Plaintiffs filed the No-Fault Case on March 15, 2017, Compl., ECF No. 1 in No-Fault Case, and the Settlement Case on April 6, 2017, Compl., ECF No. 1 in Sett. Case. In both cases, I issued my customary order relating to the filing of motions. ECF No. 21 in No-Fault Case; ECF No. 15 in Sett. Case. In the No-Fault Case, GEICO complied with the order, filing a short letter describing the factual and legal basis for its belief that Plaintiffs' Complaint was deficient and failed to state a claim for reimbursement under the MSPP. ECF No. 22. GEICO also challenged the sufficiency of the class action allegations and noted that it was "researching other aspects of the case and . . . may raise other issues including whether the complaint should be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction." *Id.* I held a conference call, ECF No. 25, and as agreed during that call, GEICO filed its motion to dismiss and memorandum in support in the No-Fault Case, ECF Nos. 30 and 31; Plaintiffs amended their pleadings in that case, ECF No. 33; and GEICO renewed its request to move to dismiss, ECF No. 34. It also sought leave to file a similar motion to dismiss in the Settlement Case. ECF No. 19 in Sett. Case. I struck the original motion to dismiss in the No-Fault Case, ECF No. 37 in No-Fault

Case; permitted Plaintiffs to amend in the Settlement Case, ECF No. 26 in Sett. Case; and GEICO filed the motions to dismiss that now are pending, ECF No. 44 in No-Fault Case; ECF No. 31 in Sett. Case. Both of these motions challenge the Court's jurisdiction and argue that Plaintiffs fail to state a claim or present sufficient class allegations.

Plaintiffs filed consolidated Oppositions, docketed as ECF No. 49 in the No-Fault Case and ECF No. 35 in the Settlement Case; GEICO filed consolidated Replies, docketed as ECF No. 53 in the No-Fault Case and ECF No. 39 in the Settlement Case; and the parties filed summaries of their memoranda and opposition in both cases, ECF Nos. 55, 56 in No-Fault Case; ECF Nos. 41, 42 in Sett. Case. A hearing is not necessary. *See* Loc. R. 105.6. Neither party discusses the jurisdictional issue at any length but, given that the cases cannot proceed without subject matter jurisdiction and the Court must consider the issue *sua sponte* and dismiss the lawsuit if jurisdiction is lacking, *see* Fed. R. Civ. P. 12(h)(3), I will address it first. In a nutshell, if the Plaintiffs have standing to sue GEICO, then there is subject matter jurisdiction. If not, there is not.

## Jurisdiction

This Court may "adjudicate only actual cases and controversies." *Zaycer v. Sturm Foods, Inc.*, 896 F. Supp. 2d 399, 407 (D. Md. 2012) (citing U.S. Const. art. III, § 2; *O'Shea v. Littleton*, 414 U.S. 488, 493 (1974); *Bishop v. Bartlett*, 575 F.3d 419, 423 (4th Cir. 2009)). Thus, this Court only has jurisdiction if

> (1) [the plaintiff] has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* at 408 (quoting *Bishop*, 575 F.3d at 423). In other words, the plaintiff must have standing. *See id.*

For putative class actions, such as the cases before me, the Court "analyze[s] standing based on the allegations of personal injury made by the named plaintiffs. Without a sufficient allegation of harm to the named plaintiff in particular, plaintiffs cannot meet their burden of establishing standing." *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 343 (4th Cir. 2017) (quoting *Beck v. McDonald*, 848 F.3d 262, 269–70 (4th Cir. 2017) (citation and internal quotation marks omitted) (alterations from *Dreher* removed)). Notably, "[a]ssignees of a claim . . . have long been permitted to bring suit," because "[l]awsuits by assignees . . . are 'cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process.'" *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 285–86 (2008) (quoting *Vt. Agency of Nat. Res. v. United States ex rel. Stevens,* 529 U.S. 765, 777–78 (2000) (internal quotation marks omitted)). Thus, "the assignee of a claim has standing to assert the injury in fact suffered by the assignor." *Vt. Agency of Nat. Res.,* 529 U.S. at 773.

GEICO contends that this Court lacks subject matter jurisdiction because Plaintiffs lack standing. Def.'s No-Fault Mem. 7–8, 10; Def.'s Sett. Mem. 7, 9. When a defendant moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, asserting a facial challenge that "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based," as GEICO does here, "the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a 12(b)(6) consideration." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *see Lutfi v. United States*, 527 F. App'x 236, 241 (4th Cir. 2013); *Fianko v. United States*, No. PWG-12-2025, 2013 WL 3873226, at *4 (D. Md. July 24, 2013). Thus, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient

facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir.

2009); *see In re KBR, Inc., Burn Pit Litig.*, 925 F. Supp. 2d 752, 758 (D. Md. 2013) (quoting

*Kerns*, 585 F.3d at 192). This Court must act "on the assumption that all the allegations in the

complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56

(2007) (citations omitted). The burden is on the plaintiff to establish jurisdiction. *Sherill v.

Mayor of Balt.*, 31 F. Supp. 3d 750, 763 (D. Md. 2014). (citing *Lovern v. Edwards*, 190 F.3d

648, 654 (4th Cir. 1999)).

## *Discussion*

GEICO insists that the Amended Complaints "fail[] to plead any facts demonstrating how

Plaintiffs or their MAO assignor(s) suffered an injury in fact." Def.'s No-Fault Mem. 10; *see*

Def.'s Sett. Mem. 9. And, GEICO contends that Plaintiffs' amended pleadings still fail to allege

"whether and when any valid assignments of rights were made by the MAO to any of the

Plaintiffs," Def.'s No-Fault Mem. 11; *see id.* at 10 n.5 (cross-referencing 12(b)(6) discussion in

12(b)(1) discussion); Def.'s Sett. Mem. 11. Plaintiffs counter:

> Both FACs allege that the underlying MAOs, who assigned their rights of
> recovery to the Plaintiffs, suffered an *economic injury* as result of making
> payments GEICO was statutorily required to pay in the first place, whether by
> virtue of an underlying no-fault insurance policy or a settlement agreement. *E.g.*,
> No-Fault FAC ¶ 4 ("[T]he MAOs paid or otherwise incurred losses for the
> medical items or treatment even though the GEICO was responsible for paying
> those expenses."); *id.* ¶¶ 5, 55, 57, 60-61, 75, 77, 81, 83, 88 (alleging how GEICO
> caused economic injury to the underlying MAOs); Settlement FAC ¶¶ 4, 5, 51,
> 56, 66, 69, 71, 72 (same). In either case, this quantifiable economic loss is a real
> and cognizable injury sufficient to confer standing to the underlying MAOs and
> thus, by assignment, to Plaintiffs.

Pls.' Opp'n 8. GEICO disagrees, arguing that Plaintiffs do nothing more than "[g]enerically

declar[e] that unidentified MAO assignors have made payments that were not reimbursed by

GEICO," which, in GEICO's view, "means nothing because GEICO's obligation to reimburse

does not arise until several prerequisites are satisfied," and Plaintiffs have not alleged that those

prerequisites were satisfied. Def.'s Reply 1. Thus, to determine whether Plaintiffs have standing, I must consider whether Plaintiffs sufficiently alleged that the MAOs suffered an injury in fact, *see Bishop*, 575 F.3d at 423, that is, that they were not reimbursed when they should have been, and whether the MAOs assigned their right to reimbursement to Plaintiffs, *see Vt. Agency of Nat. Res.,* 529 U.S. at 773. *See also MAO-MSO Recovery II, LLC v. USAA Cas. Ins. Co.*, No. 17-21289-CIV, 2017 WL 6411099, at *4 (S.D. Fla. Dec. 14, 2017) (noting that these facts must be alleged to establish standing).

### 1. Injury in Fact

*O'Connor v. Mayor of Baltimore*, 494 F. Supp. 2d 372 (D. Md. 2007), provides guidance on what constitutes adequate pleading of injury in fact by a private party seeking to bring a claim under the MSPP. There, a former firefighter with the Baltimore City Fire Department contracted mesothelioma and "incurred significant medical expenses, paid by Medicare, in treating his disease." *Id*. at 372. Finding that the disease resulted from his employment, the Maryland Workers' Compensation Commission ordered Baltimore City to pay O'Connor's related medical bills. *Id.* When Baltimore City (which, because it is self-insured, qualified as a primary payer under the MSPP) failed to pay, O'Connor sued it for damages representing twice the amount of the medical expenses that Medicare paid on his behalf, pursuant to the MSPP. *Id.*

Baltimore City moved to dismiss, arguing that O'Connor lacked standing because he had not suffered an injury in fact. *Id*. at 373–74. This Court concluded that O'Connor "ha[d] alleged an injury in fact," reasoning:

> In particular, the Complaint avers that the MSP statute renders the City responsible as a primary payer for O'Connor's medical expenses and that its refusal to fulfill this obligation has forced Medicare to make all mesothelioma-related payments on O'Connor's behalf. (Compl.¶¶ 5–6, 8, 11–15.) These general allegations of injury suffice at this early stage of the litigation. *See White Tail Park,* 413 F.3d at 459 (citing *Lujan,* 504 U.S. at 561, 112 S.Ct. 2130). Moreover,

the MSP statute's citizen suit provision exists to redress exactly this type of injury. *See Manning v. Utils. Mut. Ins. Co.,* 254 F.3d 387, 394 (2d Cir.2001) ("The MSP creates a private right of action for individuals whose medical bills are improperly denied by insurers and instead paid by Medicare....").

*Id.* at 374.

Here, similarly, in the No-Fault Case, Plaintiffs claim that the MAOs (their assignors) made conditional payments on behalf of their beneficiaries following automobile accidents in which the beneficiaries sustained injuries requiring medical services and/or supplies. No-Fault Am. Compl. ¶¶ 50–54. They also allege that GEICO, as those beneficiaries' primary insurer, was obligated to make the payments, but failed to reimburse the MAOs, as it was required to do by statute. *Id.* Specifically, they claim:

> Plaintiffs have identified medical claims whereby Plaintiffs' beneficiaries were involved in automobile-related accidents and experienced medical expenses as a result. Of those claims, Plaintiffs have been able to determine that those Medicare beneficiaries possessed automobile insurance policies with the Defendant containing no-fault provisions. Thus, there is reasonable evidence of overlapping coverage and evidence that the payments were made by a Medicare Part C payer instead of the primary payer, the Defendant herein. . . .
>
>         . . .
>
>         . . . for the purposes of *illustration* alone, and subject to the collection of additional data through discovery, Plaintiffs allege, with specificity, the following representative claim involving payments for medical services that Defendant was primarily responsible for. A Florida resident was a receiving [sic] Medicare benefits from the an [sic] MAO whose right to recover under the MSP act have [sic] been assigned to Plaintiffs. That person was involved in an automobile accident on April 25, 2014 that required medical services arising out of the use, maintenance, and/or operation of a motor vehicle. Plaintiffs' MAO paid for those medical expenses. That person, however, at the time of the accident also possessed a PIP policy with the Defendant, which required payment of medical expesens [sic] up to the policy limit of $10,000. Defendant, however, did not pay or reimburse the MAOs for those expenses within the required time frame, as required of a primary payer. Additionally, the Defendant did not challenge the MAO's payment of those medical expenses as reasonable and necessary within the required time frame.

*Id.* ¶¶ 55, 57. Although Plaintiffs do not name the "Medicare Beneficiary, . . . the corresponding MAO, Full Risk Payer and/or their assignee(s)," they assert that they will do so "upon execution of a qualified protective order." *Id.* at 15 n.10.

And, likewise, in the Settlement Case, Plaintiffs claim that GEICO indemnified their insureds for accidents causing injury to the MAOs' beneficiaries and made payments pursuant to settlement agreements but failed to reimburse the MAOs for the beneficiaries' medical expenses that the MAOs had covered. Sett. Am. Compl. ¶¶ 47–49, 61–66. They assert that their allegations are based on their "review of claims data," through which they "have identified settlements which followed incidents involving Plaintiffs' beneficiaries and Defendant's insureds (Tortfeasors) where Plaintiffs' beneficiaries sustained injuries that required medical treatment." *Id.* ¶ 50. They claim:

> Such medical treatment was provided by Plaintiffs' MAOs. When Tortfeasors and Medicare Beneficiaries entered into settlements to resolve claims made against Tortfeasors, Defendant indemnified its insured Tortfeasors by making settlement payments. The data reviewed by Plaintiffs indicates that Defendant never reimbursed Plaintiffs' MAOs for the medical treatments after Defendant entered into settlement agreements with the Medicare Beneficiaries.

*Id.* And, Plaintiffs include the following representative facts:

> An Ohio resident named Mr. V.G. was injured in an accident by a Geico isurance carrier. Mr. G's medical expenses were subsequently paid by an MAO. Following Mr. G's claim against the Geico insured, Geico indemnified its insured Tortfeasor and made payments pursuant to a settlement of Mr. G's claims. However, Geico did not pay or reimburse the MAO for Mr. G's medical expenses within the required time frame, as required of a primary payer.

*Id.* ¶ 53.

Notably, in remarkably similar cases that the same three Plaintiffs (represented by some, if not all, of the same attorneys) filed in the Central District of California against another insurance company, the district court concluded recently that allegations similar to Plaintiffs' allegations here were "generally sufficient to demonstrate injury in fact." *See MAO-MSO*

*Recovery II, LLC v. Farmers Ins. Exch.* ("*Farmers*"), No. 217CV02522CASPLAX, 2017 WL
5634097, at *3–4, *7 (C.D. Cal. Nov. 20, 2017). In *Farmers*, where there also was a "no-fault"
case and a settlement" case, the no-fault complaint "include[d] representative facts regarding two
Florida residents, Ms. V.C. and Mr. S.H.F., who at the time of their automobile accidents
possessed Personal Injury Protection ('PIP') policies issued by defendants, which required
payment of medical expenses up to a $10,000 policy limit," and the settlement complaint

> include[d] representative facts regarding two Florida residents, Mr. M.C. and Ms.
> C.N., who were injured in accidents by individuals insured by defendants.
> Following their claims against defendants' insureds, defendants indemnified their
> insured tortfeasors and made payments pursuant to settlements. Defendants failed
> to reimburse the respective MAOs for their enrollees' medical expenses.

2017 WL 5634097, at *3–4. The court noted that the representative facts in the no-fault
complaint did not, however, "include the identity of the assignor MAO or the specific defendant
that was allegedly responsible for the primary payment," and, in the settlement complaint, they
did not "allege which MAO paid the expenses or the specific defendant that was responsible for
payment under the MSPA." *Id.* Reasoning that "plaintiffs need only allege facts demonstrating
that the MAOs' 'incurred reimbursable costs and were not reimbursed,'" the court concluded that
"the representative facts [we]re generally sufficient to demonstrate injury in fact." *Id.* at *7
(quoting *MAO-MSO Recovery II, LLC v. Boehringer Ingelheim Pharm., Inc.* ("*Boehringer*"), No.
17-CV-21996-UU, 2017 WL 4682335, at *2 (S.D. Fla. Oct. 10, 2017)). I find that, in these cases
before me too, Plaintiffs sufficiently pleaded injury in fact by alleging that the MAOs incurred
costs covering their beneficiaries' medical expenses under circumstances in which GEICO was
obligated to reimburse the MAOs but failed to do so. *See id.*; *Boehringer*, 2017 WL 4682335, at
*4; *O'Connor*, 494 F. Supp. 2d at 374.

## 2. *Assignment*

Neither this Court nor the Fourth Circuit has addressed the factual specificity needed to allege standing based on an assignment by an MAO in a case brought pursuant to the MSPP. In a highly analogous case in which surgical care centers (collectively, "ASCs") sought to recover patients' benefits under plans issued by health insurance companies (collectively, "Cigna"), however, this Court considered whether the ASCs had "adequately pled that they ha[d] derivative standing as assignees of plan members' rights in order to bring ERISA claims." *Conn. Gen. Life Ins. Co. v. Advanced Surgery Ctr. of Bethesda, LLC*, No. DKC 14-2376, 2015 WL 4394408, at *26 (D. Md. July 15, 2015). The ASCs had alleged that, before "receiving care, the ASCs' Cigna-insured patients sign[ed] forms assigning to the ASC the patient's rights and benefits under their Cigna health insurance plan," and that "[t]he rights assigned include[d] the right to appeal benefit denials and to sue." *Id.* (quoting compl.). In Cigna's view, this allegation was insufficient because "not all assignments of ERISA rights convey the same rights," and therefore the ASCs needed to "provide the actual language of the assignments, which they have failed to do." *Id.*

Judge Chasanow observed that, in *Brown v. Sikora & Assocs., Inc.,* 311 F. App'x 568, 570 (4th Cir. 2008), the Fourth Circuit "not[ed] that 'sister circuits have consistently recognized [derivative standing for ERISA benefits] when based on the valid assignment of ERISA health and welfare benefits by participant and beneficiaries.'" *Id.* (quoting *Brown*). She concluded that the ASCs "plausibly alleged that they have derivative standing to bring ERISA claims on behalf of their plan members, who specifically assigned them in writing their 'rights and benefits under their Cigna health insurance plan,' including the 'right to appeal benefit denials and to sue.'" *Id.* at *27 (quoting compl.). In her analysis, she observed that "[c]ourts outside of the Fourth Circuit

that have addressed whether a plaintiff's allegations regarding the assignment of rights from a plan participant or beneficiary are sufficient to confer derivative standing under ERISA have required different levels of specificity." *Id.* As an example of a higher specificity requirement, she cited a case from the Southern District of Florida, *Sanctuary Surgical Ctr., Inc. v. Aetna, Inc.,* No. 11–80799–CV, 2012 WL 993097, at *2 (S.D. Fla. Mar. 22, 2012), in which the "plaintiffs'/providers' allegations that they had been assigned rights by their patients were insufficient to confer derivative ERISA standing because plaintiffs failed to allege that they were 'written assignments' of rights and did not provide the express language of the assignments." *Id*. Judge Chasanow was "not persuaded that in order plausibly to allege derivative standing that the actual assignment language is needed," although she noted that "at the summary judgment stage the ASCs will need definitively to show that the scope of the assignment covers all ERISA rights they have purportedly received from patients in order to proceed with these claims." *Id.*

Likewise, here, I find that Plaintiffs' allegations of assignment are sufficient to survive a motion to dismiss. Plaintiffs "assert the rights of MAOs via assignment of all rights, title, and interest allowing them to bring these claims." Am. Compl. 2 n.2 in No-Fault Case; Am. Compl. ¶ 2 in Sett. Case. With regard to each Plaintiff, the Amended Complaints specifically allege: "Numerous MAOs have assigned their recovery rights to assert the causes of action alleged in this Complaint to Plaintiff. As part of those assignments, Plaintiff is empowered to recover reimbursement of Medicare payments made by the MAOs that should have been paid, in the first instance, by the Defendant." No-Fault Am. Compl. ¶¶ 44–46; Sett. Am. Compl. ¶¶ 41–43. Thus, as in *Connecticut General*, Plaintiffs allege that they were assigned the rights to pursue the rights they now assert in these cases. Certainly, Plaintiffs do not name the MAOs or state when the rights were assigned. But they do, however, assert in the No-Fault Case that, "the name of

Medicare Beneficiary, as well as the corresponding MAO, Full Risk Payer and/or their assignee(s), shall be provided to the Defendant upon execution of a qualified protective order." No-Fault Am. Compl. 15 n.10.  I find that the pleadings in both cases are sufficient to withstand GEICO's motions.  Like Judge Chasanow, I note that while these allegations are sufficient at this preliminary stage in the proceedings, the validity and scope of the assignments nevertheless may be challenged on summary judgment.

Case law from the Southern District of Florida certainly requires more specificity in pleading a valid assignment for purposes of an MSPP claim, as was true for an ERISA claim in *Sanctuary Surgical Ctr.*, 2012 WL 993097, at *2, the ERISA action that Judge Chasanow cited. *See, e.g.*, *MAO-MSO Recovery II, LLC v. USAA Cas. Ins. Co.*, No. 17-20946-CIV, 2018 WL 295527, at *4 (S.D. Fla. Jan. 3, 2018) (finding that "bare bones assignment allegations" that did not identify the MAOs that assigned their reimbursement to the plaintiffs, or the dates or essential terms of the assignments, were "insufficient to permit the Court to infer the validity of the assignments").[3]  And, in *Farmers*, despite finding that the Plaintiffs sufficiently pleaded injury in fact, the California court, relying on *Boehringer*, 2017 WL 4682335, and *MAO–MSO Recovery II, LLC v. Mercury General*, No. 17-2557-AB (FFMX), 2017 WL 5086293 (C.D. Cal. Nov. 2, 2017), nevertheless concluded that Plaintiffs lacked standing because they "failed to allege sufficient facts demonstrating valid assignments by the MAOs." 2017 WL 5634097, at *7. But, none of these cases are binding authority, and I respectfully disagree with regard to the amount of specificity required to survive a motion to dismiss.  I am persuaded by Judge

---

[3] In *USAA*, No. 17-20946-CIV, the Florida court observed that "[s]everal cases from [the Southern District of Florida]—addressing far more substantial allegations than those contained in the First Amended Complaint—found that Plaintiffs were not validly assigned the right to assert an MAOs claims, and consequently dismissed the complaint for lack of standing." 2018 WL 295527, at *3 (citing eight cases from 2016 as examples).

Chasanow's reasoning in *Connecticut General* that Plaintiffs' standing is sufficiently pleaded with the allegation that each "Plaintiff is empowered to recover reimbursement of Medicare payments made by the MAOs that should have been paid, in the first instance, by the Defendant." No-Fault Am. Compl. ¶¶ 44–46; Sett. Am. Compl. ¶¶ 41–43. Accordingly, Defendant's motions to dismiss pursuant to Rule 12(b)(1) are denied. In reaching this result, I am mindful that those courts that have granted defendants' motions to dismiss for failure to plead the specific details of the assignments that form the basis for the plaintiffs' claims have done so with leave to amend to provide this information. Of course, the defendants in those cases (as here) are not required to accept *ipse dixit* allegations by the plaintiffs that they do have assignments without ever knowing their details. But for purposes of initial pleading, I agree with Judge Chasanow that the information sought by Defendant in this case is best obtained through discovery. As already noted, if Plaintiffs fail to back up their assertions with the assignments themselves, then GEICO will be entitled to seek relief through summary judgment. And when I discus with counsel how discovery is to proceed in this case, I will make it clear that Plaintiffs will be expected to expedite production of the assignments before they may seek discovery from GEICO.[4]

### Failure to State a Claim

GEICO insists that, even if this Court has jurisdiction, Plaintiffs still fail to state a claim on any of their counts because "Plaintiffs' amended complaint[s] rests on wholly conclusory allegations, not facts." Def.'s No-Fault Mem. 10; Def.'s Sett. Mem. 10 (same). Pursuant to Rule 12(b)(6), pleadings are subject to dismissal if they "fail[ ] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A pleading must contain "a short and plain statement of

---

[4] Indeed, there is nothing preventing Plaintiffs from expeditiously producing those assignments to GEICO without a formal document production request (and they would be wise to do so), subject to a reasonable protective order.

the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "A claim has facial plausibility when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the [opposing party] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Rule 12(b)(6)'s purpose "is to test the sufficiency of a [claim] and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012) (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)).

*GEICO's Arguments*

Both cases include a count for "Private Cause of Action Under 42 U.S.C. § 1395y(b)(3)(A) (Count I); the No-Fault Case also includes a count for "Direct Right of Recovery Pursuant to 42 C.F.R. § 411.24(e) for Breach of Contract" (Count II). According to GEICO, "[d]espite the amendments to the [No-Fault] complaint, Plaintiffs have failed to allege specific facts describing any non-reimbursement of charges paid by an MAO for medical treatment rendered to a GEICO insured/MAO enrollee," and therefore the private cause of action in the No-Fault Case fails. Def.'s No-Fault Mem. 4. GEICO similarly contends in the Settlement Case that, "[d]espite amending their Complaint, Plaintiffs have again failed to include facts in Count I to support the claim that they are entitled to reimbursement from GEICO." Def.'s Sett. Mem. 3–4. As for the breach of contract claim in the No-Fault Case, GEICO's argument is similar: "Plaintiffs have failed to allege even one specific instance where GEICO was presented with, but failed to reimburse, medical charges conditionally paid by an MAO but which were covered by a GEICO no-fault policy." Def.'s No-Fault Mem. 4.

With regard to the No-Fault Amended Complaint, noting that "plaintiffs include an 'illustrative example,'" which, as GEICO reads it, "states only that an unidentified Florida resident and MAO beneficiary, had an accident on April 25, 2014," GEICO argues:

> The amended complaint fails to prove any other facts including: (1) the identity of the GEICO insured/MAO enrollee whose accident-related medical expenses were purportedly paid by an MAO; (2) the identity of the GEICO insured's MAO; (3) whether GEICO was notified of the accident, when and by whom; (4) whether a no-fault claim was filed with GEICO; (5) the identity of the healthcare providers; (6) whether GEICO notified Medicare of its primary payer status; (7) whether the MAO identified GEICO as the primary payer before allegedly making conditional payments; (8) whether it was determined that GEICO would not make payment or that payment by GEICO was not reasonably expected to be made; (9) whether the MAO's payments were truly "conditional" under the MSP statute and covered reasonable, necessary and causally-related expenses; (10) when, in what amount, and to whom payments were made, and for what diagnosis codes; (11) whether policy limits exhausted when GEICO was notified of the MAO's payments; (12) whether and when a demand letter sent to GEICO by the MAO; and (13) whether and when any valid assignments of rights were made by the MAO to any of the Plaintiffs.

Def.'s No-Fault Mem. 11; *see also id.* at 15 (challenging whether Plaintiffs sufficiently pleaded that "any MAO paid bills within the scope of any GEICO insured's PIP coverage, and that such payments were 'conditional'").  In the Settlement Case, GEICO contends that, beyond the representative facts about "Mr. G,"

> [t]he amended complaint fails to provide any other facts including: (1) the identity of the claimant who settled his claim with GEICO; (2) the identity of the GEICO insured on whose behalf a settlement was made; (3) the identity of the MAO(s) allegedly entitled to reimbursement for "conditional" payments of the medical expenses for treatment rendered to the claimant; (4) the date of the incident that was the subject of settlement; (5) the treatment sought and received by the claimant and whether it was reasonable, necessary and causally related to the incident; (6) the identity of the medical providers(s) who rendered treatment; (7) the bills submitted by the medical provider(s); (8) whether it was determined that GEICO would not make payment or that payment by GEICO was not reasonably expected to be made; (9) when, in what amount and to whom payments were made; (10) the amount of any "conditional" payment made by the MAO(s) that GEICO allegedly should have paid; (11) whether GEICO notified Medicare of its primary payer status; (12) whether any MAO identified GEICO as a primary payer; (13) whether recovery demand letters were sent to GEICO requesting reimbursement for any "conditional payment" made; (14) whether GEICO

pursued the five levels of appeal; and (15) whether and when any valid assignments or rights were made by the MAO(s) at issue to any Plaintiff.

Sett. Am. Compl. ¶¶ 10–11.  Thus, in both cases, other than the assignment allegations previously discussed, GEICO contends that three details (which it believes are necessary) are lacking: the identities of the insureds/claimants and the MAOs, the specific services and supplies provided, and the efforts made to secure GEICO's payments and GEICO's response to those efforts.

*Discussion*

"[T]here are three elements of the MSP's private cause of action: (1) a primary plan, (2) that is responsible to pay for an item or service, and (3) that failed to make the appropriate payment to Medicare for the item or service."  *Glover v. Philip Morris USA*, 380 F. Supp. 2d 1279, 1290 (M.D. Fla. 2005), *aff'd sub nom. Glover v. Liggett Grp., Inc.*, 459 F.3d 1304 (11th Cir. 2006); *see O'Connor v. Mayor of Baltimore*, 494 F. Supp. 2d 372, 374 (D. Md. 2007) (citing *Glover*).  And, "[a] breach of contract is 'a failure without legal excuse to perform any promise which forms the whole or part of a contract . . . .'" *Boardley v. Household Fin. Corp. III*, 39 F. Supp. 3d 689, 706 (D. Md. 2014) (quoting *In re Ashby Enters., Ltd.,* 250 B.R. 69, 72 (Bankr. D. Md. 2000)); *see Weiss v. Sheet Metal Fabricators, Inc.,* 110 A.2d 671, 675 (Md. 1955).  Thus, for both counts, the issue is whether Plaintiffs sufficiently alleged that GEICO failed to make a payment for which it was responsible.

GEICO relies on *MSP Recovery, LLC v. Allstate Ins. Co.* ("*Eleventh Cir. Allstate Op.*"), 835 F.3d 1351, 1361 (11th Cir. 2016), to argue that "the MAO must allege and offer proof that the items and services for which conditional payments were made were covered under the enrollee's no-fault policy."  Def.'s Mem. 16.  There, the Eleventh Circuit, on a consolidated appeal of eight MSPP cases, held that MSPP plaintiffs must "allege in their complaints, and then

subsequently prove with evidence, that Defendants' valid insurance contracts actually render Defendants responsible for primary payment of the expenses Plaintiffs seek to recover." *Eleventh Cir. Allstate Op.*, 835 F.3d at 1361. GEICO also relies on *MSP Recovery, LLC* v. *Allstate Insurance Co.* ("*Dist. Ct. Allstate Op.*"), No. 15-20788-CIV-SEITZ/TURNOFF, 2015 WL 5882122 (S.D. Fla. Oct. 6, 2015).[5] There, the court dismissed an MSPP claim for failure to state a claim, reasoning that, with regard to showing that the defendant was obligated to pay, "Plaintiff d[id] nothing more than make conclusory statements that the medical bills it paid were reasonable, necessary, and related to the auto accident," without pleading "any underlying facts," such as "what type of injuries Plaintiff suffered in the accident, what injuries were treated, what services the medical bills payed by FHCP were for, the amounts of the individual bills that were payed, or whether the amounts of the bills were reasonable." *Id.* at *2. The court concluded that the plaintiff did "not adequately 'demonstrate[]'[] Defendant's responsibility to pay the bills based on its contractual obligations." *Id.*

But, in three more recent opinions, all of which post-date the Eleventh Circuit opinion, the Southern District of Florida considered the sufficiency of similarly parsimonious pleadings with regard to whether the plaintiffs demonstrated the defendants' responsibility to pay and reached the opposite conclusion. *See MSPA Claims 1, LLC v. Kingsway Amigo Ins. Co.* ("*Kingsway*"), No. 16-20212-CIV, 2017 WL 4621159, at *1 (S.D. Fla. Aug. 28, 2017); *MSPA Claims I, LLC v. Century Surety Co.* ("*Century*"), No. 16-20752-CIV, 2017 WL 998282, at *3 (S.D. Fla. Mar. 15, 2017); *MSPA Claims 1, LLC v. Infinity Auto Ins. Co.* ("*Infinity*"), No. 15-21504-CIV, 2017 WL 2733789, at *1 (S.D. Fla. Mar. 9, 2017).

In *Infinity*, the court summarized the factual allegations as follows:

_____

[5] Although *Eleventh Cir. Allstate Op.* involved the same parties, *Dist. Ct. Allstate Op.* was not one of the eight cases in the consolidated appeal to the Eleventh Circuit.

> Plaintiff is an assignee of subrogated claims, recovery, and reimbursement rights from Florida Healthcare Plus ("FHCP"), a Health Maintenance Organization ("HMO") and a Medicare Advantage Plan participant ("MAO"). Defendant was a primary payer obligated to pay for medical services for one enrollee insured by FHCP. The enrollee was injured, FHCP payed for enrollee's medical bills, and Defendant failed to reimburse FCHP.

2017 WL 2733789, at *1 (citations to compl. omitted). The defendant, Infinity, contended that the allegations failed to state a claim because "Plaintiff failed to allege that Defendant was responsible for paying enrollee's medical bills, Defendant had actual or constructive knowledge of the medical bills, Plaintiff demanded payment, and Defendant knew the enrollee was a Medicare beneficiary." *Id.* at *4. Infinity, like GEICO, relied on *Dist. Ct. Allstate Op.*, 2015 WL 5882122. *Id.* The court disagreed with Infinity's argument, observing that "Defendant fails to consider the more recent opinion by the Eleventh Circuit . . . , which held the following: 'We hold that a contractual obligation may serve as sufficient demonstration of responsibility for payment to satisfy the condition precedent to suit under the MSP Act.'" *Id.* (quoting *Eleventh Cir. Allstate Op.*, 835 F.3d at 1361). The court concluded that, following the Eleventh Circuit's holding, "Plaintiff's allegations . . .—that Defendant was contractually obligated to make primary payment and failed to do so—[we]re sufficient." *Id.* Infinity also argued, as GEICO does here, that the "Plaintiff failed to allege that Plaintiff demanded payment." *Id.* The court again disagreed, noting that "Plaintiff specifically alleged in its Amended Complaint that '[o]n March 9[ ], 2015, a letter was sent to Defendant demanding reimbursement . . . [.]'" *Id.* (quoting compl.).

Again, in *Century*, the defendant moved to dismiss on the grounds that the plaintiff had "failed to demonstrate that Defendant [was] liable for Enrollee's medical costs," which is a condition precedent to a claim under § 1395y(b)(3)(A). 2017 WL 998282, at *3. And, again relying on the holding in *Eleventh Cir. Allstate Op.*, the Southern District of Florida held that "a

plaintiff sufficiently pleads satisfaction of the condition precedent if a plaintiff has alleged that the defendant's valid insurance contract renders the defendant responsible for the primary payment of the plaintiff's medical expenses." *Id.* (quoting *Eleventh Cir. Allstate Op.*, 835 F.3d at 1361). It concluded that the pleadings sufficiently alleged the defendant's obligation to pay and thereby satisfied the condition precedent, because

> Plaintiff ha[d] pled that: Defendant issued a policy of insurance to the owner of the property where Enrollee was injured; Defendant's policy provided Med-Pay benefits; the Med-Pay benefits covered medical services and/or supplies that were provided to the Enrollee; Defendant's policy was in full force and effect at the time of Enrollee's accident; and the policy is the primary insurance coverage for Enrollee's medical expenses arising from the accident.

*Id.*

Finally, in *Kingsway*, MSPA Claims 1 sought to recover medical costs paid for a beneficiary who sustained injuries in an automobile accident. 2017 WL 4621159, at *1. It filed suit against Kingsway Amigo Insurance Company, which was the "alleged insurer" of the driver who caused the accident. *Id.* In its motion to dismiss, the defendant "contend[ed] that the Second Amended Complaint 'relie[d] upon conclusions rather than facts to support its claim under the Act,'" insisting that "MSPA d[id] not allege the nature of the Enrollee's injuries, d[id] not allege the care that she received for her alleged injuries, nor d[id] MSPA attach medical records or bills to its Second Amended Complaint to demonstrate Kingsway's responsibility with respect to MSPA's alleged payments." *Id.* at *5 (quoting br.). The magistrate judge recommended denial of the motion, reasoning:

> Such arguments might be appropriate at summary judgment, but such exacting detail and evidentiary proof is simply not required at the motion to dismiss stage of the proceedings. *See Iqbal*, 556 U.S. at 678 ("[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation.") (internal quotations omitted). Plaintiff has met its burden in pleading sufficient factual content—the contractual obligation to make primary payments by Defendant and

its subsequent failure to do so—that allows us to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

*Id.*

Although neither this Court nor the Fourth Circuit has addressed how, if at all, satisfaction of the condition precedent to a private MSPP action must be pleaded, it is noteworthy that, at least in the context of a contract dispute, "failure to satisfy a condition precedent is ordinarily considered an affirmative defense," and "plaintiffs are not required to expressly plead satisfaction of a condition precedent to allege a breach-of-contract claim." *Constructure Mgmt., Inc. v. Berkley Assurance Co.*, No. GLR-16-0284, 2017 WL 818717, at *6 (D. Md. Mar. 2, 2017) (quoting *United States v. Clark Constr. Grp., LLC*, No. PJM 15-2885, 2016 WL 4269078, at *6 (D. Md. Aug. 15, 2016)). Moreover, "[a]n affirmative defense is usually not appropriate at the motion to dismiss stage," and therefore "unless the facts necessary to establish it are available on the face of the pleadings," an affirmative defense-based motion to dismiss typically is "rejected [as] premature." *Id.* (quoting *Clark Constr. Grp.*, 2016 WL 4269078, at *6).

Here, Plaintiffs claim in Count I of the No-Fault Case that GEICO's "insureds who had PIP, BRB, or Med Pay no-fault coverage . . . were involved in automobile accidents which resulted in the necessary and reasonable provision of Medicare Services," and GEICO, pursuant to those no-fault coverage provisions in its automobile insurance policies, was obligated to pay for the Medicare Services yet failed to do so. No-Fault Am. Compl. ¶¶ 68, 71, 73–74; *see also id.* ¶ 51 ("As a direct and proximate result of these automobile accidents, the Medicare Beneficiaries required medical services and/or supplies."); *id.* ¶¶ 55, 77 (stating that they "have identified medical claims" in which Plaintiffs' beneficiaries, who were also GEICO's insureds under policies with no-fault provisions, "were involved in automobile-related accidents and

experienced medical expenses as a result" and the secondary payer, rather than GEICO, paid for the medical expenses; providing "representative facts"). And, in Count II, they claim that GEICO "was contractually obligated to pay for medical expenses and items arising out of an automobile accident, and Defendant failed to meet that obligation." No-Fault Am. Compl. ¶ 81.

In the Settlement Case, Plaintiffs allege that "Medicare Beneficiaries suffered injuries" and incurred medical expenses, which "were required to be paid by Defendant" but actually were paid by the beneficiaries' MAOs; GEICO entered into settlement agreements with the Medicare Beneficiaries; yet "Defendant failed to pay or reimburse the Medicare Beneficiaries' MAOs for the payments made by the MAOs." Sett. Am. Compl. ¶¶ 47–48; *see also id.* ¶ 50 (stating that Plaintiffs' reviewed claims data and learned that GEICO "never reimbursed Plaintiffs' MAOs for the medical treatments after Defendant entered into settlement agreements with the Medicare Beneficiaries"); *id.* ¶ 53 (alleging, as an example, that "Mr. V.G. was injured in an accident by a Geico i[n]surance carrier," his "medical expenses were subsequently paid by an MAO," and after he placed a claim "against the Geico insured, Geico indemnified its insured Tortfeasor and made payments pursuant to a settlement of Mr. G's claims," but "Geico did not pay or reimburse the MAO for Mr. G's medical expenses within the required time frame").

It is true that Plaintiffs do not allege exactly what services and supplies any beneficiaries received. They do, however, allege in the No-Fault Case that the "automobile accidents . . . resulted in the *necessary and reasonable* provision of Medicare Services." No-Fault Am. Compl. ¶ 71 (emphasis added). Moreover, as Plaintiffs note in both of their Amended Complaints, a conditional payment under the MSPP may only be made for items or services that are "reasonable and necessary for the diagnosis or treatment of illness or injury." 42 U.S.C. § 1395y(a)(1)(A); *see* No-Fault Am. Compl. ¶¶ 28–30; Sett. Am. Compl. ¶¶ 28–30. Thus, by alleging that Plaintiffs' MAOs made conditional payments, Plaintiffs also have alleged that

items or services for which payments were made were reasonable and necessary. *See* 42 U.S.C. § 1395y(a)(1)(A). These allegations, consequently, make it plausible, as opposed to merely possible, that GEICO's insurance coverage would cover such medical expenses stemming from an automobile accident where its insured was injured or where its insured caused another's injury and GEICO entered into a settlement agreement. *See id.*

And, while Plaintiffs do not claim that they demanded payment or reimbursement from GEICO, in the No-Fault Case they do specifically claim:

> Defendant was aware of the accidents and even assigned claim numbers to said automobile accidents. Defendant reported its responsibility as an RRE [Responsible Reporting Entity] to CMS [United States Centers of Medicare & Medicaid Services] and on other occasions did not properly report but nevertheless failed to pay and/or properly reimburse the Medicare Beneficiaries' MAOs, Full Risk Payers [a term Plaintiffs do not define] and/or their assignee(s).

No-Fault Am. Compl. ¶ 52. In the Settlement Case, Plaintiffs allege that GEICO's responsibility "to reimburse Class Members for those payments . . . is demonstrated through the Defendant's settlements with Medicare Beneficiaries enrolled in Medicare Advantage plans administered by the Class Members." Sett. Am. Compl. ¶ 66; *see also id.* ¶ 48 ("These settlements demonstrated Defendant's responsibility to reimburse Plaintiffs and the putative Class Members under the Medicare Act."); *id.* ¶ 53 (representative facts regarding such a settlement). Thus, Plaintiffs have alleged that GEICO was responsible for the payments, the second element of an MSPP claim. *See Glover v. Philip Morris USA*, 380 F. Supp. 2d 1279, 1290 (M.D. Fla. 2005), *aff'd sub nom. Glover v. Liggett Grp., Inc.*, 459 F.3d 1304 (11th Cir. 2006); *see O'Connor v. Mayor of Baltimore*, 494 F. Supp. 2d 372, 374 (D. Md. 2007) (citing *Glover*). Moreover, specific allegations of a demand for payment need not be pleaded; GEICO may raise this condition precedent as an affirmative defense. *See Constructure Mgmt.*, 2017 WL 818717, at *6.

The level of factual particularity demanded by GEICO at the initial pleading stage of these suits is eye-popping. It all but insists that Plaintiffs actually *prove*, rather than simply *plead*, their claims. This far exceeds the language of Fed. R. Civ. P. 8, and even the more demanding (but no so demanding as GEICO would have it) standards of *Iqbal* and *Twombly* do not require a plaintiff to plead all the evidentiary facts needed to support its claims.[6] The amended complaints contain a level of specificity that is sufficient for the Court "to draw the reasonable inference" that the MAOs made payments of medical supplies and services that GEICO, as the primary payer, was obligated to cover; that GEICO made payments on behalf of its insureds pursuant to settlement agreements; and that GEICO failed to pay or reimburse the MAOs, such that GEICO "is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see Kingsway*, 2017 WL 4621159, at *5; *Infinity*, 2017 WL 2733789, at *1; *Century*, 2017 WL 998282, at *3. As for the requirement of "subsequent[ly] prov[ing] [this obligation] with evidence," that does not come into play at this preliminary stage. *See Eleventh Cir. Allstate Op.*, 835 F.3d at 1361; *Kingsway*, 2017 WL 4621159, at *5. Plaintiffs have stated claims on all counts, and GEICO's motions to dismiss are denied.

## Class Allegations

GEICO moves to dismiss the class allegations, arguing in both cases that, "[a]lthough Plaintiffs have amended their class definition[s], the definition[s] [are] overly broad." Def.'s No-Fault Mem. 19; Def.'s Sett. Mem. 19. In the No-Fault Case, GEICO contends that the definition

---

[6] By way of example, GEICO, emboldened by the specificity requirements imposed by some (but not all) of the courts that have addressed the sufficiency of the complaints filed in similar claims, would have Plaintiffs plead the specific content of each of the assignments relied upon to seek reimbursement from GEICO—apparently because the assignment is a condition precedent to the right to sue. But Fed. R. Civ. P. 9(c) says otherwise, clearly stating that "[i]n pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed." That rule continues, ironically, "[b]ut when denying that a condition precedent has occurred or been performed, a party must do so with particularity."

"does not necessarily include class members entitled to relief." Def.'s No-Fault Mem. 19.

Similarly, in the Settlement Case, GEICO argues that the definition "does not necessarily include

any class members entitled to reimbursement from GEICO." Def.'s Sett. Mem. 19. Also, in both

cases, GEICO insists that "Plaintiffs fail to state *facts* that could satisfy the numerosity,

commonality, typicality and adequacy requirements of Rule 23(a)," and, "while Plaintiffs seek

certification under Rule 23(b)(3), they do not assert *a single* factual allegation as to why

certification [under that Rule] would be appropriate." Def.'s No-Fault Mem. 19; Def.'s Sett.

Mem. 19.

Rule 23(a) provides:

One or more members of a class may sue . . . as representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "In addition, Rule 23[(b)(3)][7] requires that the questions of law or fact

common to class members predominate over any questions affecting only individual members."

*Banks v. Wet Dog, Inc.*, No. RDB-13-2294, 2014 WL 4271153, at *4 (D. Md. Aug. 28, 2014)

(citing Fed. R. Civ. P. 23(b)(3)).

The No-Fault Amended Complaint defines the class as:

All non-governmental organizations, and/or their assignees, that provide benefits under Medicare Part C, in the United States of America and its territories, who made payments for automobile accident-related medical items and services on behalf of their benefic[i]aries, for which the Defendants had provided no-fault

---

[7] Both the No-Fault Case and the Settlement Case seek class certification pursuant to Fed. R. Civ. P. 23(b)(3). See No-Fault Am. Compl. ¶¶ 90, 99; Sett. Am. Compl. ¶¶ 74, 83.

insurance coverage related to the medical items and services involving automobile accidents, and for which the Defendants have not reimbursed in full or in part.

This class definition excludes (a) Defendant, their officers, directors, management, employees, subsidiaries, and affiliates; and (b) any judges or justices involved in this action and any members of their immediate families.

No Fault Am. Compl. ¶ 58.  The Settlement Amended Complaint defines the class as:

All non-governmental organizations, and/or their assignees that provide benefits under Medicare Part C, in the United States of America and its territories, who made payments for medical items and services on behalf of their beneficiaries for which Defendant has not reimbursed in full or part after Defendant entered into settlements with Medicare Beneficiaries enrolled in a Medicare Advantage Plan.

This class definition excludes (a) Defendant, its officers, directors, management, employees, subsidiaries, and affiliates; and (b) any judges or justices involved in this action and any members of their immediate families.

Sett. Am. Compl. ¶ 55.

In both cases, Plaintiffs allege that the class includes "hundreds of MAOs," all of which share "common questions of fact and law, i.e., whether Defendant failed to comport with its statutory duty to pay or reimburse MAOs pursuant to the MSP provisions," and that Plaintiffs' claims that GEICO "fail[ed] to make payment and fail[ed] to reimburse MAOs" are "typical of the Class." No Fault Am. Compl. ¶ 89(a)–(c); Sett. Am. Compl. ¶ 73(a)–(c).  They also assert that "Plaintiffs' interests in vindicating these claims are shared with all members of the Class and there are no conflicts between the named Plaintiffs and the putative Class Members," and that "Plaintiffs are represented by counsel who are competent and experienced in class action litigation and also have no conflicts."  No Fault Am. Compl. ¶ 89(d); Sett. Am. Compl. ¶ 73(d). In the No-Fault Case, Plaintiffs assert that it would be "relatively simply" to locate class members by reviewing CMS records.  No-Fault Am. Compl. ¶ 89(e).  And, they allege in both cases that "common issues of law and fact predominate over any questions affecting only individual members of the Class" such that "effort, evidence and expense" will not be duplicated

and will be more effective than separately litigating a number of small, parallel claims. *Id.* ¶¶ 90–91; Sett. Am. Compl. ¶¶ 74–75.

At this stage, I am only deciding GEICO's motions to dismiss. Plaintiffs have not had the opportunity to seek Rule 23 certification. And, I agree with Plaintiffs that discovery is necessary to address the issues GEICO raises. *See* Pl.'s Opp'n 23–24. Consequently, it is premature to "ask this Court to decide now that this case can never be maintained as a class action, as courts typically "reserve their analysis of the propriety of a proposed class until the plaintiffs move for class certification." *Banks*, 2014 WL 4271153, at *4. Because, taking the factual allegations as true, "the requirements of Rule 23 could be met[,] . . . dismissal is unwarranted." *Id.* GEICO's motions to dismiss the class allegations are denied without prejudice to renewal at the point of class certification.

## Conclusion

In sum, I find that Plaintiffs have standing and pleaded plausible claims for relief. Accordingly, GEICO's motions to dismiss ARE DENIED. Insofar as GEICO's motions allege that Plaintiffs lack standing, the denials are without prejudice to renewal at the close of discovery, should the record support the renewal. GEICO's motions to dismiss the class allegations ARE DENIED without prejudice to filing motions to strike in each case at the point of class certification.

Because I am denying GEICO's motions to dismiss, the next step in these cases will be for it to file answers, after which I will issue a scheduling order and discovery will begin. I want to caution the parties, however, that this is not the kind of case where discovery should proceed hell bent for leather focusing on all issues simultaneously. There are many issues raised by the pleadings that discovery should address, but not all of them need to be pursued at once. GEICO

is entitled to know the details of the assignments and the underlying facts supporting the elements of the reimbursement claims. This is merits discovery. But there also will be class discovery, which often overlaps with merits discovery. Regardless of the focus of the discovery, it must be proportional to the issues raised by the pleadings. Fed. R. Civ. P. 26(b)(1). This means that the discovery needs to be accomplished with a thoughtful discovery plan that needs to be put in place promptly. Counsel are advised to review the provisions of Chapter 21, Manual for Complex Litigation, Fourth (2017) (particularly those discussing whether it makes sense "to hear and determine threshold dispositive motions, particularly motions that do not require extensive discovery, before hearing and determine class certification motions," *see id.* § 21.11). I will schedule a telephone call with counsel to discuss how best to develop a pretrial schedule and discovery plan, but in advance of that call counsel should begin to think about what such a schedule and discovery plan should look like. To assist you in this regard, I am attaching to this order the standard Discovery Order that I issue in all my cases. While the limitations on the number of interrogatories, document production requests and the length of fact depositions will need to be adjusted, the other provisions will be the same, and counsel should be fully familiar with the order before the conference call.

## ORDER

Accordingly, it is, this 21st day of February, 2018 hereby ORDERED that

1. GEICO's Motion to Dismiss the Amended Complaint and Class Allegations in the No-Fault Case, ECF No. 44 in PWG-17-711, IS DENIED;

2. GEICO's Motion to Dismiss the Amended Complaint and Class Allegations in the Settlement Case, ECF No. 31 in PWG-17-964, IS DENIED;

3. GEICO's Answers in both cases are due March 16, 2018.

_____/S/_____
Paul W. Grimm
United States District Judge

lyb